COLUMBIA RIVER PACKERS ASSOCIATION, Appellant, v. SPRINGFIELD. GROCER COMPANY, Respondent.

St. Louis Court of Appeals, February 18, 1908.

1. SALES: Sales by Samples: Failure to Conform to Sample: Rejection of Goods. Where certain goods were purchased by samples and when shipped were found to be of inferior grade to the samples exhibited at the time of the sale, the purchaser had a right to rescind the contract and reject the goods within a reasonable time after inspecting them.

2. ———: ———: Jury Question. In an action for damages for the failure of the purchaser of goods to receive them, where the

defendant claimed that he goods shipped were inferior to the samples on which they were sold, and where the evidence was conflicting as to whether they were sold by sample and whether they were inferior to the sample by which they were sold, the verdict of the jury upon such issue was conclusive.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*F. S. Heffernan* for appellant.

"The mere exhibition of a sample at a sale amounts only to a representation that the sample exhibited has been taken from the bulk of the commodity offered for sale in the usual way." Benjamin on Sales, p. 848; Horgons v. Stone, 5 N. Y. 85. "Every exhibition of a sample to the purchaser at the time of the sale does not *per se* make a sale by sample. There must be an agreement to sell by sample, or at least an understanding of the parties that the sale is to be by sample." Gunther v. Atwell, 19 Md. 157; Waring v. Mason, 18 Wend. 434; Beirne v. Dord, 5 N. Y. 104; Jones v. Wasson, 3 Baxt. 211; Day v. Raguet, 14 Minn. 282; The Monte Allegre, 9 Wheat. 647; Barnard v. Kellogg, 10 Wall. 383.

*Sebree, Farrington* and *Pepperdine & Wear* for respondent.

GOODE, J.—On April 28th and May 9th, 1905, the plaintiff sold defendant two deliveries of canned salmon; about six or seven hundred cases in all. The contracts of sale were in writing, but we need not copy them. They were negotiated by P. J. Carroll, a traveling salesman for the Meinrath Brokerage Company of Kansas City. This company dealt in grocers' goods, and the defendant, which is a wholesale grocery concern in the city of Springfield, was one of its customers. The sale was

made for the plaintiff, the Columbia River Packers Association, a corporation of Astoria, Oregon. The goods were shipped in carload to defendant, arriving in Springfield some time in August. Several cans were taken out of the car by defendant's officers and opened, and thereupon the entire purchase was rejected as falling below the quality of the samples exhibited to defendant when the contract was made. Both the Meinrath Brokerage Company and plaintiff insisted the goods shipped conformed in all respects to the contract and plaintiff refused to receive them back. As the defendant stood by its rejection, the carload of salmon was reshipped to Kansas City and sold there for the account of defendant, entailing a loss on plaintiff, as is claimed, of $219.92, to recover which the present action was instituted. The petition states the sale of the carload of salmon to be delivered to defendant f. o. b. Astoria, Oregon, at the price named in the contracts; that the total price was $2,565.93; states, too, the shipment of the salmon and its arrival at Springfield in due time; that the fish corresponded to the terms of sale, but defendant refused to accept them and plaintiff was obliged to reship to Kansas City and sell at the loss mentioned. In defense the amended answer, on which the cause was tried, set up that plaintiff, by its agent, represented the fish sold were of a certain kind, quality and color; that the brand was known as the Golden Age Salmon and said agent represented salmon of this brand was of the quality, color and kind shown by samples exhibited to defendant's officers; that relying on the representations so made by the agent, defendant was induced to enter into the contract of purchase; that it thereafter examined the goods in the carload shipped to it and found that, though the goods were labeled Golden Age, the kind, quality and color of the fish did not correspond with the representations made as to Golden Age salmon, but were inferior in grade, quality, kind and color and

were not Golden Age salmon.  In another paragraph of
the answer, substantially the same averments are made
as to the representations of the agent, and a counter-
claim is set up for the difference between the price de-
fendant was to pay for Golden Age salmon of the quality
represented, and the increase in the market value of
the same at the time of delivery.  This difference was
stated to be $235; for which judgment was prayed.  It
is further averred in the answer that defendant was
at all times ready and willing to receive and pay for
the quality of salmon it had bought; that as soon as
it found the goods shipped did not conform to the sam-
ples and representations, it notified the agent of plain-
tiff and refused to accept the goods tendered by plaintiff.
At the conclusion of the evidence the plaintiff requested
three declarations of law.  Two of these declared, in
effect, that every exhibition of a sample of goods to
a purchaser at the time of a sale, does not amount
per se, to a representation that the sample exhibited
has been taken from the bulk of the commodity offered
for sale, nor make the sale one by sample; that to con-
stitute a sale by sample there must be an agreement or
understanding of the parties the sale is by sample.  The
third declaration was that under the evidence and facts
plaintiff was entitled to judgment.  This instruction was
refused, but the other two were given, and thereupon
the court found the issues for defendant and entered
judgment for costs against plaintiff.  This appeal was
taken.

The rulings on the requested declarations of law
show the court adopted plaintiff's theory of the law
but found against it on the facts; and because of the
strong conflict in the evidence on the several issues of
fact this ruling cannot be disturbed.  It is the conten-
tion of plaintiff's counsel that instead of the sale being
by sample, defendant's officers, who negotiated it, had
handled Golden Age salmon previously, knew the quality

and color of the brand and simply gave an order for a carload of Golden Age salmon; that the carload shipped was Golden Age and of the same quality defendant previously had handled under the same name. The evidence as a whole does not support plaintiff's position that the sale was not by sample. The material facts are these: plaintiff packs various grades of salmon at its establishment in Oregon. The same grade or quality of fish is put up under different labels. That is to say, the best quality of fish caught may be sold under several labels or brands, all of equal merit and bringing the same price in the markets. The same thing is done with the second grade of fish caught. The brand Golden Age consists of fish of the second quality taken in the Columbia river. The first quality of the catch is put up under the brand of Palm Salmon and brings a higher price than Golden Age. The Golden Age brand is of exactly the same quality as Silver Crest and about the same quality as Warren A-1. These different labels are put on the same quality of fish in order that retail dealers may develop a good-will or trade for a distinctive line of goods handled by them under a particular label, which will distinguish their goods from those of other dealers. Defendant handled Golden Age salmon. The sale of the carload in controversy was conducted in the following manner: Carroll visited defendant's establishment and in a conversation with its manager Helfrecht, was told defendant was about out of salmon. He offered to supply defendant and Helfrecht said they wanted Golden Age salmon. Carroll had no samples of that brand with him, or none were accessible, but as it was of the same quality of goods as the Silver Crest brand, he opened one or two cans of the latter brand and exhibited the contents to Helfrecht and to Robberson, another officer of the defendant. He also opened a can of Warren A-1, and said the Golden Age would be about like it. Now both Robberson and Hel-

frecht swore positively they bought from the samples exhibited, and that Carroll agreed the goods to be shipped would be of the same quality as those samples. When the goods arrived in August, before receiving them, defendant's officers, cut open five or six cans and found the fish to be inferior in color, in the oil in which they were packed, and in general quality, to the samples Carroll had shown and also to Golden Age salmon. They introduced testimony tending to prove the goods were not Golden Age salmon. Shortly afterwards Carroll visited them and thereupon thirty-six cans were taken out of the car and cut, and according to the testimony for defendant, six or seven different grades were found in these cans, which did not comply with the samples shown at the time of the purchase, nor come up to the standard of Golden Age salmon. Carroll admitted the fish were not of uniform color, but swore variations of color would be found in a large order of salmon of any quality or brand. There can be no question the testimony for defendant tended to show the goods shipped were of an inferior grade and not according to the samples and representations they swore were exhibited and made as an inducement to purchase. This being true, the defendant had the right to rescind the contract and reject the goods in a reasonable time. [Johnson v. Agricultural Co., 20 Mo. App. 100.] The evidence for defendant tended to show not only that the goods did not conform to the samples, but that they were not the Golden Age brand at all. A great deal of evidence was introduced for plaintiff showing sales to various parties in Kansas City and elsewhere of Golden Age salmon, during the same season, and that the deliveries were satisfactory. This evidence had a very remote, if any, bearing on the question of whether the carload in controversy was according to warranty. It is insisted for plaintiff the salmon were rejected because defendant's market was too limited for the goods to be

resold.   Certainly the evidence does not conclusively show this was the motive for the rejection, if, indeed, it has any tendency to show it.   The essential questions in the case were whether the fish were sold by sample, and, if so, did they conform to the sample; or, if they were not sold by sample, but merely as the Golden Age brand, whether they were up to the standard of that brand.   On these several issues the evidence was highly conflicting.

The judgment will be affirmed.   It is so ordered. All concur.